May it please the Court, Jack Shulakoff representing the appellants. The Court should reverse the decision below because the trial court did not exercise its discretion and did not determine whether the few awards submitted by the Appeals Council complied with the party's 998 agreement. By its own admission, the trial court expressly declined to examine the propriety of the fees brought by the appellee. It held that because the Appeals Council had agreed to reduce its initial inflated request for fees of close to $600,000, the Court did not have to then review the application to ensure that it complied with the party's 998 agreement. I just want to clarify a point here. It's your position that the 998 agreement precludes even a Hensley analysis, right? Is it your argument that this Court should not apply Hensley, that that's not the appropriate standard and in fact there's this contractual reason that Ms. Alvarado is precluded entirely from seeking fees for any claims other than her individual claims? Yes, that's correct. But in the lower court, you argued that Hensley applied and under the Hensley analysis, the fees that were awarded are improper. So help me understand why you didn't raise the contractual argument below and now on appeal you're saying that that's the only argument that we should consider. Well, I think that we did raise below the 998 and did cite the 998 in our papers below. And certainly there was discussion below about Hensley. But ultimately, this Court has to decide the proper analysis to use and the 998 is a controlling document in this case that enables the other side to even have any ability to recover fees. But you didn't argue in front of the district court that the 998 agreement is the controlling or governing rule for purposes of the fee application. In fact, you really only argued the Hensley factors. Well, we certainly raised the 998 issue. I mean, I think the Hensley was certainly argued. But I think that again, that before we can even get to that issue that the district court erred by not even considering, not even reviewing the application after the reduction had been made on the reply brief. So the application is made for close to $700,000 in fees. We file our opposition. The other side says, yes, you're right, that perhaps half of that is inflated. And then the court says specifically that, okay, well, they've reduced it. So now... Did the language in the 998 agreement expressly preclude Ms. Alvarado from seeking fees under Hensley? Because I'm looking at the language and it says that she may seek fees for her individual claims and any other, and for any other reason under the law or provided by law or something like that. But there was no language that said that she is waiving or precluded in any way from seeking fees under sort of the California Hensley standard, right? Well, I think that what the key language is says that plaintiff's counsel may seek an award of reasonable attorney's fees and costs actually incurred as of the date of this offer in pursuit of plaintiff's individual claims in this action and recoverable by law. The clear import of, and then he goes on to say later on in that paragraph, defendant's counsel reserves the right to challenge or otherwise oppose any motion or application for fees brought by plaintiff's counsel, including without limitation, the right to oppose any request for fees or costs not incurred in the prosecution of plaintiff's remaining individual claims. The clear import of the 998 was to say, we will pay you $22,000 if you settle the case. You can recover your attorney's fees, but only those that were incurred as part of the individual lawsuit. Would you have said that, though? I mean, I agree with you that that might have been the intent or that might have been sort of what Walmart, you know, was hoping for. But why not include that specific and express language in the agreement that indicates her waiver of any fees outside the HESI? Well, I think that we did when we say that in pursuit of plaintiff's individual claims in this action. I think that that is saying individual claims. And recoverable by law. Well, the individual claims that are recoverable by law. I don't think it's expanding it, because otherwise it would be essentially saying, well, you can get whatever fees you want. It would be superfluous to have any language referring to individual claims. If it is simply, we're going to follow him. As a practical matter, is there really any difference between the 998 offer and the Hensley analysis? That is, it seems like the 998 offer is just an application of the Hensley standard. Hensley standard, key point is, what success did you achieve? And the 998 offer says you get reasonable attorney's fees and costs actually incurred in pursuit of individual claims, i.e., not the class action claims. So to me, it just seems it's basically applying the Hensley standard to the fact of this case. That you can get fees for individual claims, but not in pursuit of the bigger goals you may have, the plaintiff's counsel may have tried to have sought. I think that's largely correct, except that to the extent that, I mean, if we interpret Hensley, the Hensley analysis to say that, okay, you don't get any fees for your class or PAGA case, because you didn't win any of that, and that you can still recover your individual fees based on your individual pursuit of the claim, then I think that it aligns with the 998. If Hensley is interpreted, as the other side interprets it to mean that, well, any kind of success means that you can recover any kinds of fees, and I think it's inconsistent with the contractual relationship that the parties agreed to when they signed the 998. And that's why you're starting with the 998 agreement. That's why you're saying, actually, we're not arguing for Hensley analysis. We think the 998 precludes any request for fees, even if they're intertwined with her individual claims, correct? Well, I think that the 998 is controlling, and I would just say that again, that I think that before we even get to that, that we have to address the district court's failure to conduct any review of the application after the amount was reduced. Just to follow up on Judge Desai's last question, as you read the 998 agreement, and to put it in concrete terms, suppose that there's a billing entry for 20 hours researching some issue that was relevant both to the individual claim and to the class or PACA claims. Is that recoverable, not recoverable, or some portion of it? I think it would be the district court would have the discretion to look at that and apply the 998, which says you only get for individual. And if there is an entry that's both individual and class, the district court would then have the discretion how to apply the 998. But the district court would have to exercise that discretion, right? And you would ask it to exercise that discretion how? By, well, I think that in this case, the vast majority of the effort and the time was in pursuit of the class of PACA claims. So that entry of how many hours in research would have to be significantly discounted to reflect the, to the extent that it involves individual claims. Now, I want to talk, so again, I think that just to reiterate the point that the failure to exercise discretion here is fatal and requires reversal. I think that what the court did was it trusted but didn't verify. And as a result, just adopted a claim of reduction by the other side that the other side now admits is incorrect. That the remarkable thing about, one of the remarkable things about the district court's decision is that both sides agree that it is incorrect. That there are degrees of incorrectness, but both sides agree that there are amounts that are not recoverable that the district court awarded. Now, with regard to the 998 agreement, I think that when we look at the, had the court examined and done what it was supposed to do and examined the application in response after the reduction, there are a variety of categories that we pointed out in our briefing that are simply not applicable and are not recoverable because of the utter failure, frankly, of the class and private claims. So, there's like $42,000 that was awarded for opposing motions to dismiss that the other side lost. There were motions to dismiss the class claims in the third and fourth compliance failure to state a claim. The court had granted them. They shouldn't get fees for that. There was no relationship to the individual claims. They were directed solely to the dismissal of class claims. There were four amended complaints in this case of 36,000. Each time those, the amended complaints were attacked based on class or class claims and they were consistently either abandoned or the court dismissed them. So, it's another $36,000 that should be dismissed. There was written class discovery of close to $40,000. Asking things like putative class members, contact information, repeated requests for documents, records, wage statements for other people other than him that have nothing to do with individual claims. He had already received his own personnel material. There were efforts to meet and confer for class-wide discovery that was included. Even after their reduction, there were 36 depositions that related to policies for California stores other than the Glendora store where Ms. Alvarado worked. There were meeting and conferring for topics that the other side had abandoned. There were time spent for broad topics regarding California policies that again go way beyond what Ms. Alvarado had. Then there was $40,000 of intervention costs that had nothing to do with Ms. Alvarado's claims. Ms. Alvarado didn't want to accept the awards or participate in the class cases that they were trying to intervene. She could simply just act out. There was no reason for her to intervene except to preserve her own class or PAGA claims. And then finally, most of the argument in the briefing from the other side relates to this notion that because according to them, PAGA has both individual and non-individual aspects under Viking River, that anything that the other side spent in pursuit of their PAGA claim is somehow recoverable. But that really misstates Viking River. Viking River said that the California rule that there's only one PAGA claim and it's a representative action, falls only when there's an arbitration issue. And the federal arbitration issue then requires that division between individual and non-individual claims. To go back to a statement that you made earlier in response to one of my questions, that you're arguing now that the district court abused its discretion by failing to look to the 998 agreement, sort of this contract-based argument that you're making, that you made this argument below to the district court. Is that correct? Well, we're arguing in the first instance, and I don't want this to get lost, that there was an abuse of discretion because the district court didn't exercise its discretion at all. And so it. And you're making that argument based on the fact that it didn't look to the language of the 998 agreement to determine that she is now permitted to seek fees beyond her individual claim. No, no. That's one argument. That's a second argument. The first argument is that the court abused its discretion by not exercising its discretion when it said, quote, plaintiff has since filed a reply with offer to deduct the attorney spent, attorney time spent on class certification proceedings, including work on any potential appeal, and to forego the entirety of the legal assistance time. Thus, an analysis regarding apportionment is moot. So the district court said, we're just going to accept with the other side, and we're not even going to look to see if there's anything else in there that needs to be apportioned, and in fact, the other side has now conceded there was other time that should be reduced. So that, our position is that that is an abuse of discretion in and of itself. Are you referring to the district court's decision not to do the apportionment under Hensley, correct? Under any apportionment at all. Okay, so let me get back to your other argument with respect to the contract. Can you point me to where below, where in the record you made the argument with respect to this 998 sort of contract-based argument that you're making now on appeal? Because I'm really troubled by the fact that we're hearing arguments for the first time with respect to this sort of broad contract claim that I don't see anywhere below. And so I'd like to be able to know, as you, I think, said to me earlier, that that argument was, in fact, presented to the district court. Can you point me to where in the record that is? I cannot. There's, I can certainly, we'll go back to my office and if the court wants me to. And if that's a rebuttal, you can take a look at counsel's table and then. All right. All right, I will do that. Thank you. And we will, we'll give you, we'll give you two minutes for a rebuttal. Thank you. Mr. Tillett. Good morning, Your Honor. This is Scott Tillett for Allie Claudia Alvarado. So there's three questions before this court on appeal. First is, what does the contract mean? The second question is, did the district court abuse its discretion? Why should we address the first question at all when it wasn't raised? In my view, I can't find where the issue of the contract and what it means beyond allowing your client to seek attorney's fees related to your individual claims and those that are permitted by law. Why should we even consider sort of this broader argument that I think your friend on the other side is making, which is that 998 agreements as a general matter are analysis under Hensley, which is what the California courts typically do when they're evaluating fee applications. Your Honor, I think it's a distinction without a difference, frankly, from my point of view. Under either analysis, I think that affirmance is required. I'm starting there because there was an agreement, there was a contract, and the court interpreted the contract in exercising its discretion. That's why I'm starting there. And then beyond that, the contract specifies the plaintiff may obtain attorney's fees for work performed in pursuit of individual claims and available by law. So the contract points as well to fees available by law. So I think the contract incorporates Hensley. So I think it's an overlap. And just to be clear, you have in your brief urged us to interpret the contract and apply the contract as you understand it? Indeed, and we actually pointed out that the contract never says solely in pursuit of individual claims, plus giving rise to fees for overlapping claims. And you have not argued that any of the other side's arguments based on the contract are forfeited? Because they didn't make the right arguments below, have you? We did not make a forfeiture argument based on the contract. But I think it's precisely because, in my view, we went on either analysis, right? I mean, does the contract permit or not permit attorney's fees for work on overlapping claims? That's where I was going to start, frankly, in the absence of the word solely. So Wal-Mart is arguing that it's improper entirely to go through this Hensley analysis. In fact, they don't reference Hensley at all in their opening brief. And in their reply, the only two pages that talk about Hensley are committed to talking about how Hensley is improper. That's correct. I think the reason, frankly, why Wal-Mart does that is that Hensley specifically states that where there's a common core of facts and the claims are based on related intertwined legal theories, it is improper to apportion attorney's fees between the distinct causes of action or here between those fees in pursuit of individual versus class claims. Could Wal-Mart have included language in the 998 agreement that specifically and expressly limited your client's ability to seek fees under sort of a Hensley analysis? Meaning that she's agreeing to waive any fees that might have been sort of incurred for her individual claims if the work was also done in for a forensic or other claim? Absolutely. I think the inclusion of the word solely before in pursuit of the individual claims would have done it. I think the word exclusively before in pursuit of work on individual claims would have done it. So plaintiff may obtain fees, seek fees for work performed solely in pursuit of individual claims, that would have done it. But where there's overlapping intertwined claims, where there's overlapping intertwined work, I don't believe you're hearing from her. The other side makes the argument that your reading makes in pursuit of the individual claims superfluous. I mean, if you didn't have that, if you didn't have in pursuit of plaintiff's individual claims, you would just sort of do a Hensley analysis based on how much success there was and they succeeded on the individual claim, which seems like exactly what you're asking them to do. So what effect does that clause have on your reading? Well, I guess I would encourage your honor to interpret the contract against the drafter, and that would be my friend on the other side here. Walmart drafted the 999 offer slightly drasticanship that lends itself to an ambiguity must be resolved in favor of this judgment. But it's maybe not ambiguous if we think that there's one reading that ignores a clause and another reading that gives effect to every clause. Like we have to pick the one that makes all the words do something. So how does your reading make in pursuit of the individual claims have any significance at all? So work performed solely in pursuit of individual claims is in one camp. Work performed solely in pursuit of class camp claims, which is the amount that we conceded and gave up during the district court briefing, is in another camp. And work for overlapping claims is in the third camp. So we're not saying that we should get work for, views for work performed solely in pursuit of the class claims. However, what there is overlapping work, that work was performed both in pursuit of individual claims and in pursuit of the class claims. There's no denying that was work performed in pursuit of individual claims. I think you're misinterpreting the language in Hensley when they talk about intertwined claims. I think there you're talking about two different causes of actions where they arise from the same factual scenario. So you can sue for breach of contract on a set of facts. And based on the same facts, you can also sue, say, under the UCL. You win the breach of contract but lose the UCL. They're intertwined. But you're trying to separate the class claims and the individual claims. I don't think you can do that. I think really what Hensley's really gist of it is, did you really succeed on your claim? And here, I mean, you sought a class action presumably for millions of dollars. You want injunctive relief. You didn't get the millions of dollars. You didn't get any injunctive relief. You got $22,000. So under Hensley, what we need to see is, what were your goals and what did you achieve? And I think that's what the court, the district court should have done. Assess in that way rather than trying to separate individual claims and class claims. Because it doesn't make any sense to do that. Well, I'm trying to back up to answer a question. Now, can I ask you to repeat the question? Sure. I mean, when Hensley talked about intertwined claims, I think they're talking about different causes of action. Say you sued for breach of contract and UCL based on the same set of facts. You win one, lose other one. Well, you're going to, you won one. Essentially, they come from the same set of facts. I don't think you can do that with individual claims and class claims. I think what Hensley says is you have to look at the level of success. And here, your purpose of this was to get class action, get millions of dollars in damages for the class and injunctive relief. You didn't get injunctive relief. You didn't get millions of dollars. You got $22,000. So the court has to assess what the level of success was and determine the fees accordingly. I don't think you can split the individual class claims in that way. So for purposes of seeking fees, I mean, if there's two related claims and there's, for example, deposition questions or a discovery that's done and the deposition questions discovery relates to both of the claims, those claims are intertwined. The work is overlapping. It's hard to parse out what was on behalf of one claim and what on behalf of the other. For purposes of the class versus the individual, we have several labor code violations, right? Six out of the seven survived, and that's what was settled on behalf of the individual. But those claims were all sought on behalf of the individual as well as on behalf of the class. So the depositions that were taken, the discovery that was done to seek out Walmart's policies, for example, on meal and rest breaks, on, you know, use of cell phones. They all, they're related to both the individual claims and the class claims. I mean, if you, based on your theory, then this is what, you know, or a smart plan is what I would do. I would seek class action. Obviously, that's the goal. If you fail, I would still pursue individual claims, spend a lot of time on it. I would go to the jury and say, you can award what you want, but you know what? We're just asking for $500. We have a multi-billion dollar corporation. We just want $500 in damage. And the Walmart has to say, we're really wealthy, but no, we shouldn't even award $500. Jury will probably award $500. Then you go to the court and say, look, I prevailed. I spent all this time on this individual claims, $400,000. I should get it. And that creates really perverse incentives, as opposed to looking at what was the original goal of your lawsuit. What did you achieve? Figure that out and use that as some kind of benchmark to award the fees, rather than separate individual claims and class claims. Because they, you really can't separate those two. So what is your response to your opposing counsel's argument that the district court did not exercise any discretion whatsoever in, I think, analyzing all of the things that you sort of just described for us, in terms of, like, these are fees that were incurred in furtherance of all of these claims. Sort of, what's your argument that the district court didn't go through any analysis? So if I look at the ruling, the court's ruling, the court says that plaintiff, excuse me. Yeah, it is. Plaintiff's filed a reply with an offer to deduce the attorney time spent on the class certification proceedings, including work on any potential appeal. That's an analysis regarding a portion of minutes moved. That's what counsel is focusing on. The very next sentence says, now the question before the court is whether the new Lodestar figure, $297,799, is reasonable. This concludes that it is. The court expressly said, I looked at this. I determined it's reasonable. It didn't say, I'm not going to look at this. I'm not going to decide whether it's reasonable. I'm just going to. Is there any deference to that sort of very simple statement? I mean, the district court did not lay out sort of all of its reasoning. I mean, it concluded it's reasonable, but it hasn't really provided us with very much to look at. So are we to give that simple statement that the district court made deference? Well, I would argue yes. I mean, if you look at the Moreno case, for example, it says that where there's going to be a significant deviation from the Lodestar analysis, more than 10% haircut, then perhaps more than a cursory explanation would be open. But where there is going to be a lesser deviation, a cursory explanation suffices. And there's no deviation, frankly, here. It's exactly what we asked for. So. But in saying an analysis regarding apportionment is moot, the district court seems almost to have treated your reply as if it were a stipulation. Which it wasn't. I mean, Walmart never had a chance to respond to it, and they're here, you know, raising various objections to how you, I mean, even accepting your interpretation of the contract, they have some objections to how you broke out what's attributable to the class claims and what's not. So we heard in the district court, it seems on the face of this order like the district court did not decide that you were right about that. It simply seemed that you were right about that. I would, it's important to look at the briefing below, I would say. The plaintiff cut more for work on the class issues than the defendant actually asked for. And the defendant's declaration in support of the fee motion, the opposition to the fee motion, excuse me, the defendant stated plaintiff's counsel's billing records reflect that $274,499.25 in attorney's fees were directly related to preparing the unsuccessful class certification motion, that's 2ER140. And plaintiff cut $281,874 from the Lodestar to arrive at the work that was given. That's more than the defendant pointed out in its opposition to the fee motion than the defendant had argued was in pursuit solely of the class claims. So after the plaintiff had deducted more money for fees in pursuit solely of the class claims, than the defendant even argued should be deducted, what more was there for the court to do but to say, well, you've gone above and beyond, there's nothing left for me to apportion because all of the remaining work is either solely individual or overlapping and therefore, it's still in pursuit of the individual claims. So when you say time spent on individual claims, you're saying anything that's merits based on the, it falls under individual claims? No, I'd say there's like again, three camps, right? The first camp would be in pursuit of the individual claims. For example, if there was a discovery seeking the plaintiff's wage statement specifically and had nothing to do with the rest of the class, that would be solely in the individual claims. If there was other work that was solely for class claims, that would be for example, the work done on the class certification motion that the plaintiff lost. But whether it's overlapping claims, for example, the peer-to-peer depositions that counsel referenced that go through Walmart's policies and procedures on cell phone usage, on mail advertisements, that's overlapping, that's discovery, that's work that needed to be done both in pursuit of the individual claims as well as in pursuit of the overlapping claims. And to address your honor, so you're saying you're in house with that amount, the one you claim overlapping claims? Yes, sir. Then, I mean, just to me, it doesn't make any sense that if you had pursued this as just an individual claim only, not a class action in the beginning, I mean, would you have spent $600,000 for an individual claim or $30,000 that you received? There's no way you would have spent $300,000 for an individual claim, right? I mean, there's no way to know. This is a settlement. Exactly, there's no way. And how much could she have gotten if she prevailed on it? Well, there's no way she could have. Yeah, I'm saying assume it was an individual claim. You said this is not a class action. I'm saying Walmart is an individual. There's no way you would have spent $300,000 for that. Now you're talking about what she could prevail on versus what the attorney's fees would be. Given that, no, you wouldn't have spent $300,000 to get, you know, an individual claim. Accordingly, probably maybe not for PONDA as much as for SCARBOROUGH, you would have gone on a little bit more lean mode. Potentially. I mean, I'm stuck with the contract as it was spelled out and the claims that we originally saw and where there was overlapping work. It was overlapping work. If it's not excluded by the contract, I mean, going back to something you asked earlier, I'm sorry, because there was a question and there was a question. I didn't get a response to it. Like, it had to do with, oh, goodness, I'm sorry, give me one second. I have not taken my time. Let's make, at least I don't like you, Hensley, as you look at the level of success. Thank you. Level of success. What you hoped to achieve when you filed the lawsuit. So I guess my answer to that question is that there's more than just the monetary level of success, right? Here we have Walmart. Walmart is a giant company. It employs more than 100,000 employees in the state of California. And if it's engaging in labor code, California labor code violations, and our client, the titles and obtains redress for violation through a settlement agreement, for violation of those labor code violations, that is, in fact, a public benefit that inerts to the benefit of a large group of people. I would say that's the kind of injunctive relief that courts look at in addition to the monetary relief. And so instead of just focused on focusing on, oh, there's only $22,000, I would implore the court to take into account that sort of consideration. Thank you. Thank you, Your Honors. Rebuttal. To respond to Judge Desai's question, ER 112, there's discussion of the acceptance of the 998 offer, and the reference to the 998 offer being the basis of the recovery. I do agree that the discussion about the standard refers only to Hensley. But there is reference to the 998. I do want to mention, with regard to Hensley, something that was said by my friend. That, again, that the success in this case was solely limited to Ms. Alvarado. And we know that, not only was the class completely obliterated, and there's no class relief, but even the PAGA relief, there's no PAGA settlement in this case, because no money went to the state. So this notion that, well, there was a great success here, and some kind of public relief, and so they should get hundreds of thousands of dollars, just simply isn't true. There was no PAGA release. The PAGA claims were dismissed without prejudice. And there's no, essentially, public benefit here at all. And I would just say that, with regard to the statement by the court that the lodestar was reasonable, we don't know what the court is talking about. And that even if the lodestar was reasonable, as the court said, that doesn't reflect what should be in the lodestar. In other words, it just says that they wanted money times the number of hours, but we don't know if those hours were properly included. That's what the court erred by not reviewing the apportionment, which had to either under Hensley or the 998. And with that, I will submit. All right, thank you. We thank both counsel for their arguments and cases.
judges: MILLER, LEE, DESAI